| | |
|---|---|
| 1 | Kevin P. Sullivan (State Bar No. 177757) |
| 2 | ksullivan@gdandb.com |
| | Yana L. Ridge (State Bar No. 306532) |
| 3 | yridge@gdandb.com |
| 4 | Gatzke Dillon & Ballance LLP |
| | 2762 Gateway Road |
| 5 | Carlsbad, California 92009 |
| 6 | Telephone: (760) 431-9501 |
| | Facsimile:  (760) 431-9512 |
| 7 | |
| 8 | Lauri A. Mazzuchetti (*pro hac* forthcoming) |
| | lmazzuchetti@kelleydrye.com |
| 9 | Kelley Drye & Warren LLP |
| 10 | One Jefferson Road, 2nd Floor |
| | Parsippany, New Jersey 07054 |
| 11 | Tel: (973) 503-5900 |
| 12 | |
| | Damon Suden (*pro hac* forthcoming) |
| 13 | dsuden@kelleydrye.com |
| 14 | Kelley Drye & Warren LLP |
| | 101 Park Avenue |
| 15 | New York, New York 10178 |
| 16 | Tel: (212) 808-7800 |
| 17 | Attorneys for Plaintiff, |
| 18 | LOS ANGELES SMSA LIMITED |
| | PARTNERSHIP dba VERIZON WIRELESS |

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

| | | |
|---|---|---|
| 21 | | |
| 22 | LOS ANGELES SMSA LIMITED PARTNERSHIP, a California limited partnership dba VERIZON WIRELESS, | ) CASE NO.  2:21-cv-01827 ) |
| 23 | | ) **COMPLAINT FOR** |
| 24 | Plaintiff, | ) **DECLARATORY AND** ) **INJUNCTIVE RELIEF** |
| 25 | v. | ) ) |
| 26 | CITY OF MALIBU, | ) ) |
| 27 | Defendant. | ) ) |
| 28 | | |

1

Plaintiff Los Angeles SMSA Limited Partnership, doing business as Verizon Wireless ("Verizon"), files this Complaint and Petition against defendant the City of Malibu ("City"), and alleges as follows:

## NATURE OF THE ACTION

1. This action involves the straightforward application of a bright line "shot clock" rule under federal law that required either: (i) the City to approve Verizon's application to deploy certain wireless network facilities within 60 days; or (ii) following notification that the application was deemed granted by operation of law due to the City's failure to act within that period, the City to seek judicial relief within 30 days of such notification. The City did neither, leaving Verizon's application in limbo for nearly nine months in violation of federal law.

2. Verizon therefore seeks a declaratory judgment and injunctive relief to enforce its rights under Section 6409 of the Spectrum Act, 47 U.S.C. § 1455(a), and the implementing regulations and declaratory rulings adopted by the Federal Communications Commission ("FCC"), to make certain eligible modifications to an existing wireless facility in the City.

3. Congress intended Section 6409 to advance wireless service by *expediting* the deployment of the network facilities needed to provide wireless services, like those Verizon seeks to install in the City. To carry out this purpose, Section 6409 and the FCC's rules mandate that the City "may not deny and shall approve" Verizon's eligible facilities request and issue all necessary permits within 60 days. The City failed to do so.

4. As a result, Section 6409 provides that Verizon's application "shall be deemed granted" effective on the date Verizon sends notice of the deemed granted status. Verizon sent a letter to the City that its application was deemed granted pursuant to Section 6409 on December 28, 2020.

5. The City did not respond to the letter or file suit to challenge the

deemed granted status within 30 days, as required by federal law. The City therefore cannot challenge Verizon's application or deemed granted status.

6.     Nevertheless, the City still has not issued the necessary permits and authorizations to Verizon.

7.     Thus, all that remains is for the Court to now affirm the deemed granted status of Verizon's application and direct the City to issue all necessary permits and approvals.

## PARTIES

8.     Plaintiff Los Angeles SMSA Limited Partnership, a California limited partnership, doing business as Verizon Wireless ("Verizon"), is the local affiliate of a nation-wide provider of wireless telecommunications services.

9.     Verizon is a "communications common carrier" and a "telecommunications carrier" that provides "personal wireless services" through the "placement, construction and modification of personal wireless service facilities," as those terms are defined and used in the 1996 Telecommunications Act and in the rules, regulations, and orders promulgated by the FCC.

10.    Verizon is licensed by the FCC to provide interstate and intrastate telecommunications services and personal wireless services via radio communication nationwide, including within the City. Verizon provides such services via a spectrum that it is licensed to use by the FCC.

11.    Defendant City is a general law city organized under the laws and Constitution of the State of California.

## JURISDICTION AND VENUE

12.    This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 because of the federal questions arising under the Communications Act of 1934, 47 U.S.C. Sections 151, *et seq.*, as amended by Section 6409 of the Middle Class Tax Relief and Job Creation Act of 2012 ("Spectrum Act"), codified at

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

47 U.S.C. § 1455(a). This Court has authority to issue declaratory judgments pursuant to 28 U.S.C. §§ 2201 and 2202.

13. The Central District of California, Western Division, is the appropriate venue for this action pursuant to 28 U.S.C. § 1391(b)(1) and (2) because it is a district in which the City is located and exercises its authority, and in which the property at issue is located.

## FACTUAL BACKGROUND

### Federal Law Governing Wireless Facilities Modifications

14. Section 151 of the Communications Act establishes a national policy to "make available, so far as possible, to all people of the United States, without discrimination … a rapid, efficient, Nation-wide, and world-wide wire and radio communication service with adequate facilities at reasonable charges, for the purpose of national defense, [and] for the purpose of promoting safety of life and property through the use of wire and radio communications . . . ." 47 U.S.C. § 151.

15. Under Section 6409(a) of the Spectrum Act, "a State or local government may not deny, and shall approve any eligible facilities request for a modification of an existing tower or base station that does not substantially change the physical dimensions of such tower or base station." 47 U.S.C. § 1455(a).

16. In 2014, the FCC adopted rules implementing Section 6409(a) "to prevent delay and confusion in such implementation." *In the Matter of Acceleration of Broadband Deployment by Improving Wireless Facilities Siting Policies*, Report and Order, 29 FCC Rcd 12865, ¶¶ 135-242 (2014) ("*2014 Report and Order*").

17. In particular, the FCC noted that "collocation on existing structures is often the most efficient and economical solution for mobile wireless service providers that need new cell sites to expand their existing coverage area, increase their capacity, or deploy new advanced services." *Id.* at ¶ 142.

18. FCC regulations provide that a State or local government "shall approve" an eligible facilities request ("EFR") "within 60 days of the date on which an applicant submits a request seeking approval under this section." 47 C.F.R. § 1.6100(c)(2).

19. Pursuant to 47 C.F.R. § 1.6100(b)(3), an EFR is "any request for modification of an existing tower or base station that does not substantially change the physical dimensions of the tower or base station, involving: (i) Collocation of new transmission equipment; (ii) Removal of transmission equipment; or (iii) Replacement of transmission equipment. 47 C.F.R. §§ 1.6100(b)(3) and 1.6100(b)(7); 47 U.S.C. § 1455(a)(2).

20. 47 C.F.R. § 1.6100 (b)(7) defines the criteria for when "[a] modification substantially changes the physical dimensions of an eligible support structure."

21. In a June 2020 Declaratory Ruling, the FCC clarified that, under Section 6409, the 60-day "shot clock" begins to run "when an applicant takes the first procedural step in a locality's application process and submits written documentation showing that a proposed modification is an eligible facilities request." *In the Matter of Implementation of State and Local Governments' Obligation to Approve Certain Wireless Facility Modification Requests Under Section 6409(a) of the Spectrum Act of 2012*, Declaratory Ruling and Notice of Proposed Rulemaking, 35 FCC Rcd 5977, ¶ 12 (2020) ("*2020 Declaratory Ruling*").

22. The shot clock can only be tolled by mutual agreement of the parties or when the reviewing authority determines that the application is incomplete and gives notice in accordance with the Rules "clearly and specifically delineating all missing documents or information." 47 C.F.R. § 1.6100(c)(3).

23. But a municipality cannot extend the deadline and keep the clock running without valid reason. A reviewing authority may "require the applicant to provide documentation or information only to the extent reasonably related to

determining whether the request meets the requirements of this section. A State or local government may not require an applicant to submit any other documentation, including but not limited to documentation intended to illustrate the need for such wireless facilities or to justify the business decision to modify such wireless facilities." 47 C.F.R. § 1.6100(c)(1); *2014 Report and Order* at ¶ 217.

24. And, even if the reviewing authority deems that the documentation or information provided is inadequate and that the application should not qualify under Section 6409, the appropriate course of action for the authority is to issue a written decision denying the application so that the applicant timely can seek judicial review, if appropriate. The reviewing authority cannot escape the shot clock or avoid reviewable final action by keeping an application pending indefinitely.

25. Under the FCC's rules, if the local reviewing authority fails to act on an EFR application within 60 days (accounting for any tolling periods), the applicant may notify the reviewing jurisdiction that the application has been "deemed granted." The deemed grant becomes effective when notice is given in writing. 47 C.F.R. § 1.6100(c)(2); *2020 Declaratory Ruling* at ¶ 16.

26. After receipt of notification that an EFR has been deemed granted, a reviewing authority has 30 days to file suit if it wishes to challenge the EFR. *2014 Report and Order* at ¶ 236.

**Verizon's Submittal of the EFR Application to the City**

27. On June 16, 2020, in accordance with the *2020 Declaratory Ruling*, Verizon took the first procedural step required by the City's application process by submitting an application and associated paperwork to the City to co-locate its unoccupied wireless telecommunications facility ("Facility") with existing permitted wireless telecommunications facilities owned by T-Mobile on the roof of a commercial building at 28990.5 South Pacific Coast Highway, Malibu ("Property"). Because the City does not have a streamlined application form for an EFR under

Section 6409, Verizon submitted its facility application on a use permit form. The City stated that it would process the application on June 22, 2020.

28.  On July 15, 2020, Verizon confirmed by email and letter that its application was submitted under Section 6409, qualified as an EFR, and should be processed within 60 days of submission of the application as provided by 47 C.F.R. § 1.6100.

29.  On or around August 17, 2020, Verizon sent additional materials to the City as "a supplemental submission to the materials that Verizon provided to the City earlier on June 22 and July 15, 2020." Verizon stated again that the application should be approved as an EFR under Section 6409.

30.  At times, the City raised questions regarding whether Verizon's application qualified as an EFR under Section 6409, but the City never clearly and specifically identified any missing information of the type set forth in 47 C.F.R. § 1.6100(c)(1) and (c)(3)(i). Nor did the City issue a decision denying the application.

31.  To the contrary, on or around September 8, 2020, the City proposed that the parties enter into a tolling agreement to provide time to "work out whether this qualifies as an EFR." The City stated that, as of that date, 34 days had passed on the shot clock.

32.  While the City questioned whether Verizon's application should be reviewed under a different statute (47 U.S.C. § 332) with different requirements and a slightly longer shot clock (90 days), Verizon explained why that was not the case. At all times, Verizon continued to assert that its application was an EFR and should be approved pursuant to the requirements of Section 6409 (and did not submit an application for review under any other statutory provision), but agreed to a tolling agreement and provided additional information in order to work cooperatively with the City.

33. The parties executed a tolling agreement effective as of September 8, 2020 and continued communications regarding Verizon's pending Section 6409 application.

34. On or around November 4, 2020, the City acknowledged during a telephone call that Verizon's application was an EFR under Section 6409.[1] On that call, the City also raised several issues with respect to the project.

35. The tolling agreement expired on November 30, 2020, as per the terms of the agreement.

36. On December 11, 2020, Verizon submitted additional materials and information to respond to issues raised by the City during the November 4, 2020 telephone conversation.

37. Verizon also advised the City twice in its December 11 submittal that the shot clock under Section 6409 would expire on December 26, 2020 and asked that the City advise immediately if it disputed the shot clock calculation.

38. The City responded on December 24, 2020 to Verizon's December 11 submittal but in that response did not dispute that the shot clock expired on December 26, 2020.

39. The City did not approve or deny Verizon's EFR application before December 26, 2020.

40. Nor did the City issue a notice clearly and specifically delineating any missing documents or information of the type permitted by 47 C.F.R. § 1.6100(c)(1), (c)(3)(i), or (c)(3)(iii) such that the shot clock would be tolled.

41. On December 28, 2020, Verizon notified the City in writing that Verizon's application had been deemed granted pursuant to Section 6409 and 47 C.F.R. § 1.6100(c)(4) (the "Deemed Granted Notice"). Verizon requested that the City comply with its duty to issue all necessary ministerial zoning permits and

---

[1] The City later denied making this acknowledgement in subsequent communications with Verizon.

building permits for the Facility application as required under federal law. *See In the Matter of Accelerating Wireless Broadband Deployment By Removing Barriers to Infrastructure Inv.*, Report and Order, 33 FCC Rcd. 9088, ¶¶ 133-137 (2018) ("*2018 Report and Order*") and 47 C.F.R. § 1.6002(f).

42. The City did not respond to the Deemed Granted Notice in writing or file suit against Verizon within 30 days as required by the *2014 Report and Order*. Because it missed this deadline, the City can no longer challenge the Deemed Granted Notice or the underlying EFR application.

43. The City has not yet issued the required permits and approvals.

44. The City's failure to comply with the applicable shot clocks alone is dispositive and requires the relief sought by Verizon here.

**Verizon's Application Qualifies As An EFR Under Section 6409**

45. Verizon's application is an EFR that the City was required to approve under Section 6409 because it seeks to modify an "eligible support structure" and does not "substantially change the physical dimensions of the structure" as required by 47 C.F.R. § 1.6100. Verizon's substantive right to proceed with this project under Section 6409 is clear for several reasons.

46. First, although the FCC regulations implementing Section 6409 allow the installation of new facilities that are up to 10 feet higher than existing facilities, 47 C.F.R. § 1.6100(b)(7)(i), the top height of the Facility proposed by Verizon here actually is 3 feet 2 inches **lower** than the top of the existing T-Mobile exposed antennas already on the roof of this location. The top of Verizon's antennas would also be only 5 feet 10 inches above the top of the nearest parapet wall on the roof.

47. Second, the FCC regulations allow up to six feet in horizontal extension, 47 C.F.R. § 1.6100(b)(7)(ii), but Verizon proposed for the total horizontal profile of the base station and rooftop facilities to remain the same, and to not utilize any part of the allowed six feet of additional horizontal extension.

48. Third, Verizon proposed to install four equipment cabinets, which is the allowed number of cabinets under the regulations. 47 C.F.R. § 1.6100(b)(7)(iii).

49. Fourth, all of Verizon's antennas and related equipment items are allowable transmission equipment under Section 6409.

50. Fifth, the regulations allow deployment of transmission equipment at the current site. 47 C.F.R. § 1.6100(b)(7)(iv). Verizon's backup generator was within 30 feet of the building structure that supports the current wireless facilities and, thus, was within an "area in proximity to the structure" as allowed by the regulations. 47 C.F.R. § 1.6100(b)(6).

51. Finally, the regulations do not allow modifications to a base station to "defeat the concealment elements" of the base station. 47 C.F.R. § 1.6100(b)(7)(v). The Facility was proposed to be consistent with the existing conditions of the rooftop wireless facilities.

52. Thus, even if the City had not waived its right to challenge whether Verizon's application was governed by Section 6409, the facts above demonstrate that the application is an EFR and the City was obligated to approve it.

## FIRST CAUSE OF ACTION

### (Declaratory and Injunctive Relief —

### Violation of Section 6409(a), 47 U.S.C. § 1455(a))

53. Verizon realleges paragraphs 1 through 52, inclusive, and incorporates by reference each allegation as though fully set forth herein.

54. As explained above, the City failed to act on Verizon's EFR application within the time provided by federal law. The application is therefore deemed granted and Verizon sent notice of the same on December 28, 2020.

55. The City failed to respond or file suit within 30 days as required by federal law.

56. Thus, the City cannot challenge the EFR application or the deemed granted status.

57. The City, however, has not yet issued the required permits and other approvals to Verizon.

58. The Court should therefore declare Verizon's EFR application as deemed granted and order the City to issue all necessary permits and approvals for Verizon to undertake the project described in the application.

59. Even if it were not already deemed granted, Verizon's application qualifies as an EFR under Section 6409 and the Court should order the City to grant it and issue all necessary permits and approvals.

## PRAYER FOR RELIEF

Verizon respectfully requests that judgment be entered in its favor and against the City, as follows:

1. A declaration affirming the "deemed granted" status of Verizon's EFR application.

2. An injunction and order directing the City to issue all permits and approvals under 47 C.F.R. § 1.6002(f) for the Facility to be constructed.

3. Verizon's costs incurred in this action.

4. Such other and further relief as the Court deems just and proper.

Dated:  February 26, 2021            GATZKE DILLON & BALLANCE LLP

                                     By:   /s/ Kevin P. Sullivan
                                           Kevin P. Sullivan
                                           Attorneys for Plaintiff,
                                           LOS ANGELES SMSA LIMITED
                                           PARTNERSHIP dba VERIZON
                                           WIRELESS